CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 18, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TARUN KUMAR VYAS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>SHERIFF BRYAN HUTCHENSON, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:23-cv-00738<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiff Tarun Kumar Vyas, a Virginia prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging claims for violation of his religious free exercise rights. (Compl., Dkt. No. 1.) Before the court is a motion for summary judgment filed by four of the nine defendants: Sheriff Bryan Hutchenson, the City of Harrisonburg, Sargent Allman, and Jimmy Wimer. (Dkt. No. 44.) Also before the court is plaintiff's motion for default judgment. (Dkt. No. 24.) Both motions will be denied. The court will refer this matter to a magistrate judge for an evidentiary hearing on the issue of whether administrative remedies were available to Vyas.

### I. BACKGROUND

**A. Plaintiff's Claims and Parties**

Plaintiff alleges that he was not provided with a non-beef meal in accordance with his Hindu religious beliefs when he was incarcerated at the Rockingham-Harrisonburg Regional Jail. (*See* Compl.) In addition to Hutchenson, Allman, Wimer, and the City of Harrisonburg, plaintiff

is also suing the County of Rockingham, the Rockingham County Sheriff's Office, Nurse Lauren Shenk, Lt. Wilberger, and Lt. Madison.[1]

## B. Wimer Declaration and Exhibits

In support of their motion for summary judgment, defendants have submitted the declaration of Capt. Jimmy Wimer.  (Ex. A, Dkt. No. 45-1.)  His declaration includes a copy of Section 17 of the Jail's Handbook—Inmate Grievance Procedure—as well as a copy of plaintiff's grievance records.  (*Id.*, Ex. A.A, Ex. A.B.)  Defendants' sole argument is that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).

### 1. Grievance procedure

Captain Wimer is employed by Sheriff Hutcheson, who is the Sheriff of Rockingham County.  (Wimer Decl. ¶ 1.)  Captain Wimer's duties include operation of the Jail, and he commands the Corrections Division of the Rockingham County Sheriff's Office.  (*Id.*)

Section 17 is a mechanism for offenders to express their problems or concerns with the Jail and to foster prompt solutions to institutional problems in a regulated, orderly fashion.  (*Id.* ¶ 4.)  Inmates are educated on Section 17 when they arrive at the Jail, and it is included in the Inmate Handbook, given to all inmates, and available for viewing on the Jail's electronic kiosks.  (*Id.*)  Each inmate is entitled to use the grievance procedure for problem resolution.  (*Id.* ¶ 5.)  Grievances must be filed within three days of the grievance issue.  (*Id.* ¶ 6.)

If an inmate has a concern that he feels is the basis for a grievance, the inmate must first try to verbally resolve the situation with the officer assigned to the inmate's housing unit.  (*Id.* ¶

---

[1] Rockingham County Sheriff's Office filed a motion to dismiss (Dkt. No. 86), and the County of Rockingham, Lt. Wilberger, and Lt. Madison have moved for summary judgment (Dkt. No. 88).  These motions will be addressed in a separate opinion and order.

7.) Second, the inmate must submit an Inmate Request, which is the first level of the grievance procedure. (*Id.*) The inmate must then request an Inmate Grievance Form from a Jail Deputy. (*Id.* ¶ 8.) The inmate must include the ID # of the answered Inmate Request which is available to the inmate via the Jail kiosk system. (*Id.*) If the inmate is housed in Segregation, Classification, or Medical, copies of the answered Inmate Request Form must be attached to the grievance form. (*Id.*) If the inmate does not receive a form after asking, the inmate should submit an Inmate Request to the shift supervisor. (*Id.*)

Upon receiving a grievance form from an inmate, the Jail Deputy will forward the grievance form to the Shift Supervisor who will forward it to the Jail Lieutenant. (Wimer Decl. ¶ 9.) The Jail Lieutenant will have nine (9) working days (excluding holidays and weekends) following receipt of the grievance form to respond to the grievance in writing. (*Id.*)

If dissatisfied with the response, the inmate must appeal to the Jail Captain or his designee. This is the first-level appeal response. The Jail Captain or his designee has nine (9) working days (excluding holidays and weekends) to respond to the Grievance Appeal. (*Id.* 10.) The inmate is given a copy of the response. (*Id.*)

The inmate must also make a final appeal to the Sheriff or his designee, which is the second-level appeal response. The Sheriff or his designee will respond in writing within nine (9) working days, excluding holidays and weekends. The Sheriff's decision is final. (*Id.* ¶ 11.)

Grievances concerning any medical issues will be forwarded by the Jail Lieutenant to the medical supervisor to be addressed under the first level of the grievance procedure. If the grievance is related to the medical supervisor it will be addressed by the Jail Lieutenant. Second and third levels of review remain the same (Jail Captain/Sheriff). (*Id.* ¶ 13.) If an illiterate

inmate wishes to file a grievance, staff will, upon the inmate's request, take steps to find someone to assist the inmate. (*Id.* ¶ 15.)

Any grievance appeal must be filed within three days of receiving the response that is to be appealed. (*Id.* ¶ 12.) If an inmate does not receive a response to his grievance or any grievance appeals within the allotted time for a response, he should send an Inmate Request asking if the grievance and/or grievance appeal has been received or processed. It is the inmate's responsibility to ensure the grievance or appeal is received by the proper responding party. (*Id.* ¶ 14.) Grievances must be appealed through all applicable levels of review to satisfy the requirement of exhaustion. (*Id.* ¶ 16.)

### 2. Plaintiff's grievance activities

Plaintiff was incarcerated at the Jail from February 16, 2021, through December 28, 2023. (Wimer Decl. ¶ 3.)

On July 16, 2023, plaintiff submitted Inmate Request # 185761 to the shift supervisor stating "Can all beef products from my trays be removed? I am Hindu and I cannot keep eating beef in your country." (Wimer Decl. ¶ 19; *see also* Ex. A.B.) This was the first time plaintiff submitted any inmate requests asking for a change to a no-beef diet or a diet related to plaintiff's religion. On July 16, a response was issued to Inmate Request # 185671 directing plaintiff to submit an inmate request to the medical or kitchen department. (*Id.*)

Three days later, on July 19, 2023, instead of resubmitting his diet change request, plaintiff submitted Inmate Request # 186152 to the shift supervisor asking for grievance forms. Plaintiff was given a swift response—six minutes later—indicating that a grievance form would be brought to plaintiff. (*Id.* ¶ 20.) The next day, plaintiff submitted Grievance # 23-029, stating "I want to exclude all beef products from my diet in accordance with my religious beliefs. All

4

beef products must be replaced with non-beef products which have the same nutritional value." (*Id.* ¶ 21.) The following response was issued the same day, July 20, 2023: "As the shift supervisor explained to you on the request you sent, you will need to write to medical on the kiosk. Medical handles all diet orders and they need the request sent to them from the kiosk. Medical will then take the steps they need to and finally send the diet change to the Kitchen supervisor notifying them of the change." (*Id.*) Plaintiff did not appeal the response to Grievance # 23-029. (*Id.* ¶ 22.)

On July 21, plaintiff submitted Inmate Request # 186389 to the medical department asking for a non-beef diet. Over several days, the medical department engaged in a back-and-forth dialogue with plaintiff to clarify plaintiff's request. On July 28, 2023, the medical department respondent stated that the issue would be discussed with Jail supervisors. Plaintiff did not submit a grievance related to Inmate Request # 186389. (*Id.* ¶ 23.)

Plaintiff then submitted Inmate Request # 187220 to the medical department on July 29, 2023, stating "Can you let me know if the replacement was approved?" On July 31, the medical department responded that the issue would be discussed with jail supervisors. Plaintiff did not submit a grievance related to this request. (*Id.* ¶ 24.)

**C. Plaintiff's Response**

As part of his response, Vyas included a declaration under penalty of perjury. (Dkt. No. 72 at 1–20.)

Vyas states that he was incarcerated at the Jail from February 16, 2021, through December 28, 2023. (Vyas Decl. ¶ 1.) Vyas states that upon intake at the Jail, he told the intake officer that he is Hindu, does not eat beef, has diabetes and hypertension, and he is taking insulin

5

and other medications. (Vyas Decl. ¶ 5.) Plaintiff also claims that he was never educated on Section 17 from the Inmate Handbook when he arrived at the Jail. (*Id.* ¶ 6.)

Vyas asserts that kiosks were not available for use in the booking area or in the classification housing cells, which meant that paper requests had to be submitted. (*Id.* ¶ 9.) Upon receiving a tray with beef, he immediately voiced his concern with the deputy on duty and also submitted a request form. (*Id.* ¶ 10.) Two days later, he submitted a grievance. (*Id.* ¶ 11.) When the grievance was not responded to, he submitted another request form inquiring about the grievance. No response was provided to the second request. (*Id.* ¶ 12.) Vyas "verbally voiced" his concern to a deputy, who told him to "have patience." (*Id.* ¶ 13.)

Over the next two years, Vyas submitted more than thirty combined paper requests, electronic requests, paper grievances, and handwritten appeals. (*Id.* ¶ 14.) He also submitted numerous electronic requests, paper requests, and paper grievances regarding the lack of level 1 and 2 appeal forms, but he was never provided a single appeal form in the almost three years he spent at the Jail. (*Id.* ¶ 15.) Since he was never provided with any appeal forms, Vyas submitted handwritten appeals for the lack of response regarding the issue. (*Id.* ¶ 16.)

Vyas maintains that Request # 185761, submitted on July 16, 2023, was not the first time he submitted a request for his diet issue. (*Id.* ¶ 20.) Also, there was no "kitchen" option on the kiosk to send a request to, as stated in the reply to # 185761. Vyas did, however, verbally voice his concern to a nurse when he went to the medical department for medicine. (*Id.* ¶ 21.) When no action was taken, plaintiff submitted Request # 186152 to get a grievance form as none of the floor deputies brought one for him, despite having asked every deputy doing rounds since 3:00 p.m. on July 19, 2023. (*Id.* ¶ 22.) At times, messages were closed without any response or a useless response like "OK". (*Id.* ¶ 23.) By not responding to the requests in a prompt and

reasonable fashion, the staff members ensured that Vyas could not file a grievance within the three days at issue because the message ID number is needed. (*Id.*) When a message was promptly responded to, Vyas did file the grievance within the three days required by the handbook. (*Id.* ¶ 24.)

Vyas filed grievances even though no response was elicited within a reasonable time. With respect to # 186389 and # 187220, when those grievances did not receive a response, Vyas submitted a request form to inquire about them. (*Id.* ¶ 25.) Plaintiff filed a handwritten appeal for No. 23-209[2] because none of the staff members provided an appeal form. (*Id.* ¶ 29.)

Plaintiff claims that the defendants ignored his diet issue even after several grievances and requests were acknowledged. (*Id.* ¶ 33.) It was only after another lawsuit by filed by Vyas was publicized that Allman and Nurse Lauren spoke to Vyas about the issue. (*Id.*) These defendants asked Vyas to submit a request form and "acted like I was making a mountain out of a molehill." (*Id.* ¶ 35.) Even after the news article and having small talk with Vyas about his religious dietary preference, he was still required to submit more electronic requests, which were not provided by defendants in their motion. (*Id.* ¶ 37.) Plaintiff refused to submit more paper requests because they had yielded no result. (*Id.* ¶ 38.) Defendants still did not accommodate the dietary change in a reasonable fashion, as plaintiff was still given beef trays on multiple occasions between September 2019 and December 27, 2023. (*Id.* ¶ 39.)

Vyas also filed a supplementary response with several exhibits. (Dkt. Nos. 104, 104-1.) The exhibits are several Resident Request Reports pertaining to several complaints by Vyas, including requests for new pens and postage, reports that certain clothing items had been confiscated, asking for copies of legal mail. (Dkt. No. 104-1.) Vyas argues that the exhibits

---

[2] This may be a mistake in Vyas' declaration, as the grievance number provided in defendants' evidence is Grievance # 23-029.

show that the responses to these complaints were delayed, making it "impossible for any inmate to comply with the 3 day deadline stated in the handbook," and "many times filing grievances was futile." (Dkt. No. 104 at 2–3.)

### D. Defendant's Reply, Wimer Supplemental Declaration

Captain Wimer filed a supplemental declaration to counter many of the allegations made Vyas' response. (Dkt. No. 101-1.)

Wimer states that plaintiff was able to access the inmate grievance procedure at the Jail. Plaintiff had access to all steps of the procedure, including the initial Inmate Request, the Grievance, the Level 1 Grievance Appeal, and the Level 2 Grievance Appeal. (Wimer Supp. Decl. ¶ 5.)

Plaintiff was provided access to the Jail's electronic kiosks and could submit inmate requests by February 17, 2021, the day after he was booked in to the Jail. Plaintiff submitted several Inmate Requests that day and in the several days that followed. (*Id.* ¶ 6, Ex. A.) For example, plaintiff asked for cards, games, diabetic shoes, assistance logging into the Jail's electronic tablets, a larger jumpsuit, attorney contact information, and property release forms. None of these requests asked for a non-beef diet. (*See id.*) In total, from the time plaintiff was booked into the Jail until he filed this lawsuit, plaintiff submitted over 400 Inmate Requests, about one every other day. (*Id.* ¶ 7.) Most of the time, plaintiff's requests were responded to within 24 hours. Plaintiff did not submit an Inmate Request for a non-beef diet until July 16, 2023, which was Inmate Request # 185761. (*Id.*)

Plaintiff also filed several grievances under the Jail's procedure—18 grievances before this lawsuit was filed, all of which received a response. (*Id.* ¶ 9, Ex. B.)[3] Plaintiff did not submit a grievance concerning a non-beef diet until July 20, 2023. None of plaintiff's grievances complained about a lack of access to the grievance appeal process. (*Id.* ¶ 9.)

Grievances and grievance appeals received by the Jail are not destroyed. When a grievance or grievance appeal is received, it is logged in the Jail's Master Grievance Log. (*Id.* ¶ 10, Ex. C (Jail's Master Grievance Long 10/21-11/23).) The Master Grievance Logs show that plaintiff and other inmates were able to submit grievance appeals and that some grievances were successful. (*Id.* ¶ 10.)

The Jail does not provide separate grievance appeal forms. All that is required is that an inmate correspond in writing with the appropriate responding authority, either the Captain or the Sheriff depending on the level of appeal, that they are appealing a grievance response, noting the assigned grievance number. Usually, inmates submit their grievance appeals on the standard grievance form, noting the assigned grievance number and noting that it is an appeal. The standard grievance form can be obtained by asking any deputy or by submitting an inmate request. (Wimer Supp. Decl. ¶ 14.)

On May 18 and June 19, 2022, plaintiff submitted Inmate Requests 141657 and 145229, asking for grievance forms to be delivered by 5:00 a.m. (Wimer Supp. Decl. ¶ 13, Ex. F.) The responses were "yes" and "ok". (*Id.* ¶ 13.) Plaintiff then filed four grievances on June 21, June 24, July 1, and July 6, 2022. (*Id.*, Ex. B.) Plaintiff also requested grievance forms through the inmate request system on January 4 and January 24, 2023. (*Id.*, Ex. G.)

---

[3] From the beginning of 2021 until this lawsuit was filed, a total of 222 grievances and grievance appeals were received by the Jail. Plaintiff submitted 18 of the 222, which is 8.1% of all grievance filings during that period. (Wimer Supp. Decl. ¶ 12.)

On July 10, 2022, plaintiff submitted Inmate Request # 147684, which asked "How do I properly exhaust this facility[']s grievance procedure?" (*Id.* ¶ 13, Ex. E.) Jail staff responded by describing the correct procedure as follows:

> You need to put a request form in and then when you have a returned request and you don't like the answer you receive then you can request a grievance and fill it out properly and turn it in. You will receive an answer within the time stated in the handbook from the Lt. If you don't like the answer there then you can file a second and third appeal.

(*Id.*)

On July 11, 2022, and December 2, 2022, plaintiff submitted Inmate Requests # 147475 and # 162912 asking for grievance appeal forms. (*Id.* ¶ 15, Ex. H.) The first request asked for a sheriff-level appeal form. At that time, plaintiff had not submitted a captain-level appeal for any grievance, so he was not eligible to submit a sheriff-level appeal. Plaintiff was told to ask a floor officer for a grievance form. Inmate Request # 162912 asked for captain-level and sheriff-level appeal forms. Plaintiff stated, "Can I get two copies of the forms I will need to take up grievance issues with the captain and then the sheriff so I can exhaust the grievance procedure of this facility? I have asked plenty of deputies in the past and have never got the forms." Jail staff responded, "What's your grievance? Put in a request first and we'll try and answer that." Plaintiff replied, "I have been filing grievances. I have been unable to exhaust the grievance procedures because the facility has not provided me with the required forms. So can I get those forms or a confirmation that I have been blocked from accessing my rights." Jail staff responded, "If you explain to me what you want to put a grievance in for, I will provide you with the forms you need." Instead of provided the requested information, plaintiff submitted Inmate Request # 163094, stating:

> As per 162912 you are welcome to look at my file to see what grievances I have filed. This kiosk is not the medium to discuss

10

> grievances. If I do not get the forms in a reasonable amount of time it will be assumed that I was no[t] given the forms after requesting many deputies and messaging on the kiosk. Also I will decline any oral discussion unless I get a Hindi translator.

(*Id.*, Ex. I.)

## I. ANALYSIS

### A. Default Judgment

Plaintiff moves for default judgment against defendants Allman, Hutcheson, Wimer, Nurse Lauren Shenk, City of Harrisonburg, County of Rockingham, and the Rockingham County Sheriff's Office. Plaintiff argues that these defendants either failed to file a timely waiver of service or a timely answer. First, the failure to agree to waive service of process is not a basis for default. "Importantly, a defendant who receives a request to waive service of process may decline and require that the plaintiff serve a summons and copy of the complaint." *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 631 (E.D. Va. 2010). Second, a review of the court's docket demonstrates that none of these defendants are in default.[4] Accordingly, plaintiff's motion for default judgment will be denied.

### B. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

---

[4] *See* Dkt. No. 38 (Oral Order that responsive pleadings for Hutcheson, Wimer, Allman, and City of Harrisonburg due on 2/21/24); Dkt. No. 44 (2/21/24 Motion for Summary Judgment filed by Hutcheson, Wimer, Allman, and City of Harrisonburg); Dkt. No. 15 (Lauren Shenk Waiver of Service, answer due 2/12/24); Dkt. No. 31 (2/2/24 Answer filed by Shenk); Dkt. No. 76 (Summons Return, County of Rockingham and Rockingham County Sheriff's Office answer due 6/21/24); Dkt. No. 86 (6/21/24 Motion to Dismiss by Rockingham County Sheriff's Office); Dkt. No. 88 (6/21/24 Motion for Summary Judgment by County of Rockingham, Madison, Wilberger).

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

### C. Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court."

12

*Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). This requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

13

A prisoner's "failure to exhaust is an affirmative defense under the PLRA." *See Jones*, 549 U.S. at 216.  Thus, defendant-prison officials must plead and prove that their agency had a procedure "capable of use to obtain some relief for the action complained of," *id.*, and that the prisoner-plaintiff "failed to take advantage" of that procedure before bringing his claim to federal court, *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016).  *See Jones*, 549 U.S. at 218–24.  If a defendant makes this showing, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the administrative remedy was not actually "available" to him because he was prevented, "through no fault of his own, . . . from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).  The PLRA's express "limitation on an inmate's duty to exhaust . . . has real content," *Ross*, 136 S. Ct. at 1858, and federal courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

As detailed herein, in July 2023, plaintiff submitted Inmate Requests and a Grievance pertaining to his request for a Hindu-conforming diet.  Defendants argue that while plaintiff did not need to fully appeal Grievance # 23-029, Inmate Request # 186389, *and* Inmate Request # 187220, he needed to fully appeal at least *one* of them.  Plaintiff, however, argues that the grievance process was unavailable to him because his efforts to exhaust this issue were thwarted and hindered by the defendants.  He has submitted sworn testimony pertaining to the difficulties he had in accessing the grievance procedure related to many issues, including his request for a Hindu-conforming diet.  For example, Vyas states that he did not receive any response to Inmate Requests # 186389 and # 187220, and he had to submit a request form to inquire about them.

14

(Vyas Decl. ¶ 25.) More generally, plaintiff has asserted that the delayed response times to his grievances made it impossible to comply with the deadlines in the grievance procedure. (*Id.* ¶¶ 20–23.) Also relevant is plaintiff's assertion that he was never educated on Section 17 from the Inmate Handbook when he arrived at the Jail. (*Id.* ¶ 6.) These sworn statements create issues of fact on the availability of administrative remedies. Construing the evidence in the light most favorable to plaintiff, the court finds that defendants are not entitled to summary judgment.

### III.  CONCLUSION

The court will issue an appropriate order denying plaintiff's motion for default judgment and denying defendants' motion for summary judgment.

Entered: September 18, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge