CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TARUN KUMAR VYAS,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:23-cv-00738<br>)<br>) By: Elizabeth K. Dillon |
| SHERIFF BRYAN HUTCHENSON, *et al.*,<br>    Defendants. | )   Chief United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Tarun Kumar Vyas, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging claims for violation of his religious free exercise rights. (Compl., Dkt. No. 1.)   The case is before the court on the Report and Recommendation (R&R) of U.S. Magistrate Judge Joel C. Hoppe.  (Dkt. No. 166.)  The R&R addresses whether administrative remedies were available to Vyas with respect to his claim that he was denied a Hindu-conforming diet.  The R&R also addresses Vyas's motion for sanctions.  (Dkt. No. 127.) Vyas has filed an objection to the R&R.  (Dkt. No. 180.)

As discussed herein, the court has carefully reviewed *de novo* Vyas's objections to the R&R and his other submissions related to the R&R.  Based on its review of the entire record, including a recording of the evidentiary hearing conducted by the magistrate judge on January 9, 2025 (Dkt. No. 147), the court concludes that the magistrate judge's proposed findings of fact are supported by the record and that Vyas has not shown by a preponderance of the evidence that administrative remedies were not available to him in this case.  For these reasons, discussed in more detail below, the court will overrule Vyas's objections, adopt in part and reject in part the R&R, deny Vyas's motion for sanctions, and dismiss the claims against defendants Sgt. Allman,

City of Harrisonburg, Bryan Hutchenson, Jimmy Wimer, County of Rockingham, Lt. Madison, and Lt. Wilberger. Several additional motions will also be addressed herein as appropriate.

## I.  BACKGROUND

Plaintiff alleges that he was not provided with non-beef meals in accordance with his Hindu religious beliefs when he was incarcerated at the Rockingham-Harrisonburg Regional Jail. (*See* Compl.)  Plaintiff sued Sheriff Bryan Hutcheson, Captain Jimmy Wimer, Sgt. Allman, County of Rockingham, City of Harrisonburg, Rockingham County Sheriff's Office (RCSO),[1] Nurse Lauren Shenk,[2] Lt. Wilberger, and Lt. Madison.

On February 21, 2024, defendants Sgt. Allman, City of Harrisonburg, Sheriff Bryan Hutcheson, and Captain Jimmy Wimer moved for summary judgment, arguing that plaintiff did not exhaust his administrative remedies.  (Dkt. No. 44 (first motion for summary judgment).) Defendants County of Rockingham, Lt. Wilberger, and Lt. Madison filed a separate summary judgment motion based on the same exhaustion argument.  (Dkt. No. 88 (second motion for summary judgment).)

In the first motion for summary judgment, defendants argued that plaintiff needed to fully appeal at least one grievance (Grievance #23-029) or Inmate Request (# 186389, #187220) that plaintiff initiated in July 2023.  Plaintiff, however, argued that the grievance process was unavailable to him because his efforts to exhaust this issue were thwarted and hindered by the defendants.  He submitted sworn testimony describing the difficulties he had in accessing the grievance procedure related to many issues, including his request for a Hindu-conforming diet. More generally, plaintiff asserted that the delayed response times to his grievances made it

---

[1] RCSO filed a separate motion to dismiss which was granted.  (Dkt. No. 171.)  Vyas filed a motion to reconsider that ruling.  (Dkt. No. 172.)  The court will address that motion separately.

[2] Nurse Shenk filed an answer to the complaint.  (Dkt. No. 31.)

impossible to comply with the deadlines in the grievance procedure. Finally, plaintiff asserted that he was never educated on Section 17 from the Inmate Handbook when he arrived at the Jail.

In deciding the first motion for summary judgment, the court reasoned that Vyas's "sworn statements create issues of fact on the availability of administrative remedies. Construing the evidence in the light most favorable to plaintiff, the court must find that defendants are not entitled to summary judgment." (Dkt. No. 123.) Thus, the court referred this matter to the magistrate judge "for an evidentiary hearing and preparation of a report and recommendation as to whether administrative remedies were available to plaintiff with respect to his claim that he was denied access to a Hindu-conforming diet." (Dkt. No. 124.) Judge Hoppe conducted an evidentiary hearing on January 9, 2025. (Dkt. Nos. 147–149.)

After the evidentiary hearing, Vyas filed two motions to grant an additional evidentiary hearing and a motion to construe statements he made at the hearing as if under oath and admit them into evidence. Judge Hoppe denied the motion for an additional evidentiary hearing because Vyas was "afforded sufficient time both to prepare for the hearing and to participate in the hearing in whatever manner he deemed to be appropriate." (Dkt. No. 160.) The court also rejected Vyas' attempt to "retroactively deem statements to be considered under oath" because Vyas was given the opportunity to testify under oath at the hearing, but he declined the opportunity, and it would violate due process to admit statements into evidence without being subject to cross-examination. (*Id.* at 2.) Finally, the court struck one of plaintiff's post-hearing submissions (Dkt. No. 155) because plaintiff had been given the opportunity to file only "one submission" after the hearing. The court explained that "plaintiff's attempt to file another declaration violates one of the purposes of the hearing, which was to subject his testimony to cross-examination. Plaintiff cannot have it both ways by declining to testify under oath at the

3

hearing and then submitting testimony under oath after the hearing without giving the defendants the opportunity to scrutinize plaintiff's statements via cross-examination." (Dkt. No. 160 at 2.)

The magistrate judge issued his R&R on March 10, 2025. (Dkt. No. 166.) In his R&R, the magistrate judge made the following findings of fact:

1. Vyas was incarcerated at the Rockingham-Harrisonburg Regional Jail from February 16, 2021, through December 28, 2023.

2. Captain Jimmy Wimer is employed by Sheriff Bryan Hutcheson, who is the Sheriff of Rockingham-Harrisonburg Regional Jail (the Jail). Captain Wimer oversees all Jail operations, serving in that capacity for the last ten years. He is the custodian of the Jail's grievance records, policies, and meal records.

3. The Jail has an Inmate Handbook, which includes Section 17, outlining the Inmate Grievance Procedure.

4. Plaintiff was given a copy of the Inmate Handbook when he was booked into the jail.

5. Section 17 is a mechanism for offenders to express their problems or concerns with the Jail and to foster prompt solutions to institutional problems in a regulated, orderly fashion. Inmates are educated on Section 17 when they arrive at the Jail, and it is included in the Inmate Handbook, given to all inmates, and available for viewing on the Jail's electronic kiosks. Each inmate is entitled to use the grievance procedure for problem resolution. Grievances must be filed within three days of the grievance issue.

6. Inmates can ask for assistance from a pod officer if they have trouble with the process. If an inmate is illiterate, an officer can help them with the procedure.

7. Diet requests are grievable issues.

8. If an inmate has a concern that he feels is the basis for a grievance, the inmate must

first try to verbally resolve the situation with the officer assigned to the inmate's housing unit. Second, the inmate must submit an Inmate Request, which is the first level of the grievance procedure. The inmate must then request an Inmate Grievance Form from a Jail Deputy. The inmate must include the ID # of the answered Inmate Request, which is available to the inmate via the Jail kiosk system. If the inmate is housed in Segregation, Classification, or Medical, copies of the answered Inmate Request Form must be attached to the grievance form. If the inmate does not receive a form after asking, the inmate should submit an Inmate Request to the shift supervisor.

      9. Upon receiving a grievance form from an inmate, the Jail Deputy will forward the grievance form to the Shift Supervisor who will forward it to the Jail Lieutenant. The Jail Lieutenant will have nine (9) working days (excluding holidays and weekends) following receipt of the grievance form to respond to the grievance in writing.

      10. If dissatisfied with the response, the inmate must appeal to the Jail Captain or his designee. This is the first-level appeal response. The Jail Captain or his designee has nine (9) working days (excluding holidays and weekends) to respond to the Grievance Appeal. The inmate is given a copy of the response.

      11. The inmate must also make a final appeal to the Sheriff or his designee, which is the second-level appeal response. The Sheriff or his designee will respond in writing within nine (9) working days, excluding holidays and weekends. The Sheriff's decision is final.

      12. Grievances concerning any medical issues will be forwarded by the Jail Lieutenant to the medical supervisor to be addressed under the first level of the grievance procedure. If the grievance is related to the medical supervisor it will be addressed by the Jail Lieutenant. Second and third levels of review remain the same (Jail Captain/Sheriff). If an illiterate inmate wishes to

file a grievance, staff will, upon the inmate's request, take steps to find someone to assist the inmate.

   13. Any grievance appeal must be filed within three days of receiving the response that is to be appealed. If an inmate does not receive a response to his grievance or any grievance appeals within the allotted time for a response, he should send an Inmate Request asking if the grievance and/or grievance appeal has been received or processed. It is the inmate's responsibility to ensure the grievance or appeal is received by the proper responding party. Grievances must be appealed through all applicable levels of review to satisfy the requirement of exhaustion.

   14. Plaintiff was provided access to the Jail's electronic kiosks and could submit inmate requests by February 17, 2021, the day after he was booked in to the Jail. Plaintiff submitted several Inmate Requests that day and in the several days that followed. For example, plaintiff asked for cards, games, diabetic shoes, assistance logging into the Jail's electronic tablets, a larger jumpsuit, attorney contact information, and property release forms. In total, from the time plaintiff was booked into the Jail until he filed this lawsuit, plaintiff submitted over 400 Inmate Requests, about one every other day. Most of the time, plaintiff's requests were responded to within 24 hours.

   15. Plaintiff also filed several grievances under the Jail's procedure—18 grievances before this lawsuit was filed, all of which received a response. From the beginning of 2021 until this lawsuit was filed, a total of 222 grievances and grievance appeals were received by the Jail. Plaintiff submitted 18 of the 222, which is 8.1% of all grievance filings during that period.

   16. Grievances and grievance appeals received by the Jail are not destroyed. When a grievance or grievance appeal is received, it is logged in the Jail's Master Grievance Log. The

6

Master Grievance Log shows that plaintiff and other inmates were able to submit grievance appeals and that some grievances were successful.

17. The Jail does not provide separate grievance appeal forms. To file an appeal an inmate must correspond in writing with the appropriate responding authority, either the Captain or the Sheriff depending on the level of appeal, that they are appealing a grievance response, noting the assigned grievance number. Usually, inmates submit their grievance appeals on the standard grievance form, noting the assigned grievance number and noting that it is an appeal. The standard grievance form can be obtained by asking any deputy or by submitting an inmate request.

18. On July 16, 2023, plaintiff submitted Inmate Request # 185761 to the shift supervisor stating "Can all beef products from my trays be removed? I am Hindu and I cannot keep eating beef in your country." This was the first time plaintiff submitted any inmate requests asking for a change to a no-beef diet or a diet related to plaintiff's religion. On July 16, a response was issued to Inmate Request # 185671 directing plaintiff to submit an inmate request to the medical or kitchen department.

19. On July 19, 2023, instead of resubmitting his diet change request, plaintiff submitted Inmate Request # 186152 to the shift supervisor asking for grievance forms. Plaintiff was given a swift response—six minutes later—indicating that a grievance form would be brought to plaintiff.

20. On July 20, 2023, plaintiff submitted Grievance # 23-029, stating "I want to exclude all beef products from my diet in accordance with my religious beliefs. All beef products must be replaced with non-beef products which have the same nutritional value." The following response was issued the same day, July 20, 2023: "As the shift supervisor explained to you on the request

7

you sent, you will need to write to medical on the kiosk. Medical handles all diet orders and they need the request sent to them from the kiosk. Medical will then take the steps they need to and finally send the diet change to the Kitchen supervisor notifying them of the change."

21. Plaintiff did not appeal the response to Grievance # 23-029.

22. On July 21, 2023, plaintiff submitted Inmate Request # 186389 to the medical department asking for a non-beef diet. Over several days, the medical department engaged in a back-and-forth dialogue with plaintiff to clarify plaintiff's request. On July 28, 2023, the medical department respondent stated that the issue would be discussed with Jail supervisors. Plaintiff did not submit a grievance related to Inmate Request # 186389.

23. On July 29, 2023, plaintiff submitted Inmate Request # 187220 to the medical department, stating "Can you let me know if the replacement was approved?" On July 31, the medical department responded that the issue would be discussed with jail supervisors. Plaintiff did not submit a grievance related to this request.

24. Defendants did not prevent Vyas from exhausting his administrative remedies on his request for a Hindu-conforming diet.

25. Defendants did not hinder or impede plaintiff's access to the grievance procedure.

26. Vyas was educated on the grievance procedure.

27. Prison staff are available to assist with the grievance procedure.

28. None of plaintiff's grievances were rejected as untimely.

29. Defendants responded to untimely grievances.

30. Most of plaintiff's grievances received a response within 24 hours.

31. The grievance process was not unavailable to Vyas.

32. Defendants could not have reasonably anticipated litigation when processing

plaintiff's Inmate Requests, Grievances, or Grievance Appeals.

33.  Defendants did not destroy any evidence of plaintiff's Inmate Requests, Grievances, or Grievance Appeals.

34.  Handwritten Inmate Requests were returned to Vyas and were not in the custody or control of defendants.

After making these factual findings, the magistrate judge found that Vyas "failed to meet his burden for a finding of spoliation" and that Vyas "has not shown by a preponderance of the evidence that administrative remedies were not available to him in this case." (R&R 25.) Thus, Judge Hoppe recommended that the court deny plaintiff's motion for sanctions and grant defendants' motion for summary judgment. (*Id.*)

On March 26, 2025, the court denied the second motion for summary judgment by referring to its opinion and order on the first motion for summary judgment. (Dkt. No. 170.) The court noted that the exhaustion issue had been referred for an evidentiary hearing, and the magistrate had issued his R&R. "Once the report and recommendation is reviewed, the exhaustion issue may be resolved." (*Id.*)

## II.  ANALYSIS

### A. Various Motions

Vyas has filed several motions that are currently pending. The court will address the motions that are relevant to the court's review of the R&R.

#### 1. Evidentiary hearing

Vyas has filed a motion to "reverse" Judge Hoppe's order that denied his request for another evidentiary hearing. Vyas has also filed a separate motion requesting an additional evidentiary hearing. (Dkt. Nos. 165, 174.) The court construes these motions as seeking

9

reconsideration of an interlocutory order. *See* Fed. R. Civ. P. 54(b) (providing that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). To guide their discretion in deciding Rule 54(b) motions, courts in the Fourth Circuit "look to the legal framework for Rule 59 and Rule 60 motions for reconsideration." *E.K. v. Dep't of Defense Educ. Activity*, Civil Action No. 1:25-cv-637 (PTG/IDD), 2025 WL 1921928, at *2 (E.D. Va. July 11, 2025); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Courts generally "do not depart from a previous ruling unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Orbcomm Inc. v. Calamp Corp.*, 215 F. Supp. 3d 499, 503 (E.D. Va. 2016). Generally, "[a]bsent a significant change in the law or the facts," a court will grant a motion for reconsideration only where it "has patently misunderstood a party," "made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015).

Vyas has not met any of the standards that would merit reconsideration of Judge Hoppe's order. Finding no error in comprehension or reasoning, the court declines to reconsider the magistrate judge's order.

Aside from appealing or seeking reconsideration of Judge Hoppe's order, Vyas has also requested another evidentiary hearing based on the court's ruling that denied the second motion for summary judgment in this case. (Dkt. No. 88.) As noted, the court denied that motion—filed by defendants County of Rockingham, Lt. Madison, and Lt. Wilberger—for the same reason that

10

it denied the motion for summary judgment filed by Sgt. Allman, City of Harrisonburg, Sheriff Bryan Hutcheson, and Captain Jimmy Wimer. (Dkt. No. 170.) As the court explained, the "only argument" raised in the second summary judgment motion is the "same argument" raised in the first. (*Id.*) Also, "Vyas's response to that earlier summary judgment motion is the same as his response to the motion at Docket No. 88; thus, it raises the same issue of fact." (*Id.*) Presented with this procedural posture, the court finds that an additional evidentiary hearing is not necessary and would be a waste of judicial resources.

For these reasons, the court will deny the motions to reconsider Judge Hoppe's order and for an additional evidentiary hearing.

### 2. Plaintiff's request for a jury trial

Vyas filed a motion requesting a jury trial on the exhaustion issue. (Dkt. No. 173.) Vyas also filed motions to supplement which cite a recent Supreme Court case in his argument. (Dkt. No. 184 (citing *Perttu v. Richards*, 145 S. Ct. 1793 (2025); *see also* Dkt. No. 185.) The court will grant the motions to supplement because the court has considered the arguments presented by Vyas in those motions. However, Vyas is not entitled to a jury trial on exhaustion.

In *Perttu*, the Supreme Court held that "a party has a right to a jury trial on PLRA exhaustion when that dispute is intertwined with the merits of the underlying lawsuit." 145 S. Ct. at 1798. In *Pertuu*, the dispute over exhaustion was intertwined with the merits of the plaintiff's First Amendment claim because both depended on whether the defendant "did in fact destroy" plaintiff's grievances and "retaliate against him." *Id.* The exhaustion issue in this case is whether administrative remedies were available to Vyas for him to grieve the lack of a Hindu-conforming diet. This is separate from Vyas's underlying claim that his rights were violated when he was not given a Hindu-conforming diet. Vyas does not allege that his grievances were

11

destroyed, or that administrative remedies were deliberately made unavailable to him, in retaliation for requesting a diet that conformed with his religious beliefs. The issues related to exhaustion are not intertwined with the merits of Vyas's claims.

Accordingly, the court will grant the motion to supplement but deny Vyas's motion for a jury trial.

## B. Standard of Review

With regard to the R&R, the court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). An objection is properly noted, however, only if it is stated "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003). Objections must direct the court to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id.*

Upon review, the court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C). In evaluating a magistrate judge's findings after an evidentiary hearing, the court may give a magistrate judge's report and recommendation "such weight as [their] merit commands and the sound discretion of the judge warrants," *United States v. Raddatz*, 447 U.S. 667, 682–83 (1980) (internal quotations omitted), but the court must exercise its non-delegable authority "by considering the actual testimony, and not merely by

reviewing the magistrate's report and recommendations." *Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir. 1985) (citations omitted).

## C. Spoliation

Vyas moved for sanctions against the defendants based on his allegation that they spoliated all paper requests, almost all electronic requests, and all handwritten appeals. (Dkt. No. 127.) "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The magistrate judge found that Vyas "failed to meet his burden of showing that any of the defendants could have reasonably anticipated litigation when the evidence was supposedly destroyed, that any of the evidence was destroyed, or that any of the defendants ever had possession, custody, or control of the allegedly destroyed evidence." (R&R 22 (citing *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009).)

In his objections, Vyas states that he did meet his burden of showing that the defendants could have reasonably anticipated litigation, and that the defendants had possession, custody, and control of the destroyed evidence. (Dkt. No. 180 at 12.) This contention is contrary to the evidence in this case pertaining to the retention of these records: handwritten requests are returned to inmates, plaintiff did not file any grievance appeals, and electronic requests are preserved. (R&R 23.) Moreover, Vyas has once again failed to explain how defendants could have reasonably anticipated litigation related to his requests for a Hindu-conforming diet.

Accordingly, the court will deny plaintiff's motion for sanctions.

## D. Exhaustion

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his

administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. *Id.* at 216.

In this matter, "there is no dispute that Vyas did not appeal any timely regular grievances related to his request for a non-beef, Hindu-conforming diet through all applicable levels of review—and thus did not exhaust his administrative remedies . . . ." (R&R 23.) Thus, the burden shifts to Vyas "to show, by a preponderance of the evidence, that . . . administrative remedies were unavailable through no fault of the plaintiff." *George v. Lt. Michalek*, No. 3:19cv155, 2022 WL 3580746, at *8 (E.D. Va. Aug. 19, 2022).

The court has thoroughly reviewed the lengthy objection filed by Vyas. (Dkt. No. 180.) The court addresses the most relevant objections as follows.

Vyas argues that if defendants' argument about exhaustion is accepted, then all that prison or jail officials would have to do is destroy documents or fail to maintain records and then raise exhaustion as an affirmative defense. (Dkt. No. 180 at 22.) This argument is presumptuous and misrepresents the argument made by the defendants. It assumes that defendants acted in such a manner, but the court has already determined that there is no evidence to support

14

spoliation in this case.

At various points, the R&R credits the testimony of Captain Wimer. (*See* R&R 23–24 (explaining that Captain Wimer "provided credible testimony in accordance with his declaration at the evidentiary hearing . . ."; "Captain Wimer testified that Jail personnel would respond to an untimely grievance, and no evidence before the Court draws that testimony into doubt . . .").) Vyas lists a series of contentions in an attempt to undermine Captain Wimer's credibility. (*Id.* at 8–9, 22–23.) None of them are convincing or relevant. For example, Vyas claims that Captain Wimer "falsely testified about the number of levels of appeals under Section 17." (*Id.* at 23.) Even if Captain Wimer offered incorrect or mistaken testimony, it does not change the R&R's undisputed finding that Vyas did not exhaust his appeals. It also is not relevant to the court's inquiry into the availability of administrative remedies. Vyas also asserts that Wimer is not believable because he "exhibited facial flushing and other tell-tale signs of perjury, when he was caught lying under oath." (Dkt. No. 180 at 5.) Vyas's speculative assertions do not undermine the impressions of the finder of fact in crediting Wimer's testimony. For similar reasons, the court rejects Vyas's bald and unsupported assertion that the magistrate judge "was unhappy with Wimer, since he looked at Wimer with suspicion and disdain." (*Id.* at 6.)

Ultimately, Vyas's objections to the R&R appear to contend that he did exhaust his administrative remedies, but there is no evidence because defendants have destroyed the evidence. For example, Vyas contends that the R&R "failed to accept the reasonable fact that if all the paper request forms, grievances and handwritten appeals were in fact returned to me, I would certainly have submitted them to the court, since they establish overwhelming evidence in my favor." (*Id.* at 24.) This argument assumes, without any proof, that Vyas exhausted his administrative remedies. To the contrary, the R&R found, and the court now also finds, that

15

Vyas did not exhaust his remedies because he did not fully appeal one of his diet grievances. Vyas was given the opportunity to present evidence to the contrary, and he failed. This failure is underscored by Vyas's refusal to testify under oath at the hearing.

Finally, Vyas's objections offer nothing relevant on the issue of availability. He baldly states that the defendants did "plenty" to prevent him from utilizing the grievance procedures. (Dkt. No. 180 at 18.) If that were the case, and the court finds that it was not, defendants did a rather poor job of that given how prolific Vyas was in filing complaints and grievances. And there wasno evidence presented at the hearing that Vyas was thwarted in his efforts to exhaust the Hindu diet issue. And, once again, there was no testimony by Vyas. "Importantly, plaintiff did not testify under oath at the hearing, such that any testimony could be considered in support of his argument that administrative remedies were unavailable." (R&R 24.)

For these reasons, Vyas's objections will be overruled.

**E. Summary Judgment**

The R&R recommends granting defendants' motion for summary judgment. (Dkt. No. 44.) Because both motions for summary judgment have been denied because of issues of material fact, the court declines to grant summary judgment to the defendants. However, the claims in this case can be dismissed against the parties who have moved for summary judgment based upon the exhaustion issue. One defendant, Nurse Lauren Shenk, has filed an answer and raised the exhaustion issue as an affirmative defense. (Dkt. No. 31.) The court will give notice to Vyas of its intent to dismiss the claims against Nurse Shenk based on his failure to exhaust.

## III.  CONCLUSION

For the foregoing reasons, the court will overrule Vyas's objections, adopt in part and reject in part the R&R, deny Vyas's motion for sanctions, grant Vyas's motion to supplement, and deny his remaining motions.  The court will also dismiss plaintiff's claims against Sgt. Allman, City of Harrisonburg, Bryan Hutchenson, Jimmy Wimer, County of Rockingham, Lt. Madison, and Lt. Wilberger for failure to exhaust administrative remedies.  Finally, the court will order Vyas to show cause why his claims against Nurse Shenk should not be dismissed based on his failure to exhaust.  An appropriate order will be entered.

Entered:  September 29, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge